IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SCOTT BRODIE,

      Plaintiff,                    No. CIV S-04-2453 KJM

     vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

      Defendant.               <u>ORDER</u>

_____/

        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act").  For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/////

/////

/////

/////

1

## I. Factual and Procedural Background

In a decision dated September 17, 2003, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found plaintiff has severe impairments of vasodepressive syncope with recurrent presyncopal episodes and possible seizure disorder with findings on EEG, but these impairments do not meet or medically equal a listed impairment; plaintiff is not totally credible; plaintiff has the residual functional capacity to perform a limited range of light work and substantially all of the full range of sedentary work; and using grid rules 202.21 and 201.28, plaintiff is not disabled. Administrative Transcript ("AT") 18, 23-24.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

Plaintiff contends the ALJ should have reopened a prior decision that determined plaintiff was not disabled prior to October 24, 2001; the ALJ improperly evaluated whether plaintiff's symptoms equaled a listed impairment; the ALJ improperly rejected the opinion of a treating physician; and the ALJ improperly discredited plaintiff.

II. <u>Standard of Review</u>

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. <u>Copeland v. Bowen</u>, 861 F.2d 536, 538 (9th Cir. 1988) (citing <u>Desrosiers v. Secretary of Health and Human Services</u>, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance. <u>Saelee v. Chater</u>, 94 F.3d 520, 521 (9th Cir. 1996) (citing <u>Sorenson v. Weinberger</u>, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting <u>Consolidated Edison Co. v. N.L.R.B.</u>, 305 U.S. 197, 229, 59 S. Ct. 206 (1938)). The record as a whole must be considered, <u>Howard v. Heckler</u>, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. <u>Id</u>.; <u>see</u> <u>also</u> <u>Hammock v. Bowen</u>, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, <u>see</u> <u>Sprague v. Bowen</u>, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, <u>see</u> <u>Burkhart v. Bowen</u>, 856 F.2d 1335, 1338 (9th Cir. 1988).

/////

/////

III. <u>Analysis</u>

    A. Reopening of Prior Decision

In his opening brief, plaintiff in a footnote makes a reference to the decision of the ALJ to not reopen the prior decision determining plaintiff was not disabled. Pl.'s Mem. P. & A. in Supp. Summ. J. at 1 n.1. It appears from plaintiff's argument in the reply brief that plaintiff is requesting this court reverse the Commissioner's denial of an implicit request to reopen the prior application. Pl.'s Reply at 1-2. The ALJ correctly noted that when a previous application for disability benefits has been denied by an ALJ, unless a claimant can show changed circumstances, the prior determination "creates a presumption that the claimant continued to be able to work after that date." <u>Lester v. Chater</u>, 81 F.3d 821, 827 (9th Cir. 1996) (quoting <u>Miller v. Heckler</u>, 770 F.2d 845, 848 (9th Cir. 1985) (internal brackets omitted)); <u>Chavez v. Bowen</u>, 844 F.2d 691, 692-93 (9th Cir. 1988) (citing cases); AT 14. The ALJ then concluded that plaintiff had adduced new evidence sufficient to rebut the presumption of continuing nondisability and employed the five step sequential evaluation in determining plaintiff was not disabled for the time period after the date of the prior decision. AT 15, 18-23.

Assuming, without deciding, that a request to reopen that is not explicitly made complies with the regulations, this court does not have jurisdiction to grant the relief plaintiff requests. <u>See</u> 20 C.F.R. § 404.987. A decision not to reopen a prior benefits decision is discretionary and therefore not a final decision. Although "an exception exists 'where the . . . denial of a petition to reopen is challenged on constitutional grounds,'" plaintiff presents no such challenge here. <u>Udd v. Massanari</u>, 245 F.3d 1096, 1098-99 (9th Cir. 2001) (quoting <u>Califano v. Sanders</u>, 430 U.S. 99, 107-09, 97 S. Ct. 980 (1977)). Plaintiff's request to reopen is therefore denied.

    B. Step Three Equivalence

Plaintiff contends his impairments in combination equal Listing 11.03. The Social Security Regulations "Listing of Impairments" is comprised of impairments to certain

4

1  specified categories of body systems that are severe enough to preclude a person from performing
2  gainful activity.  <u>Young v. Sullivan</u>, 911 F.2d 180, 183-84 (9th Cir. 1990); 20 C.F.R.
3  § 404.1520(d).  Conditions described in the listings are considered so severe that they are
4  irrebuttably presumed disabling.  20 C.F.R. § 404.1520(d).  In meeting or equaling a listing, all
5  the requirements of that listing must be met.  <u>Key v. Heckler</u>, 754 F.2d 1545, 1550 (9th Cir.
6  1985).

7  To meet a listed impairment, a claimant must establish that he or she meets each
8  characteristic of a listed impairment relevant to his or her claim.  To equal a listed impairment, a
9  claimant must establish symptoms, signs and laboratory findings "at least equal in severity and
10 duration" to the characteristics of a relevant listed impairment, or, if a claimant's impairment is
11 not listed, then to the listed impairment "most like" the claimant's impairment.  20 C.F.R.
12 § 404.1526.  Where more than one impairment is present, but the impairments do not meet or
13 equal a listed impairment, the impairments will be considered in combination to determine
14 whether the combination is medically equal to any listed impairment.  <u>Id.</u>  The claimant's
15 impairments "must be considered in combination and must not be fragmentized in evaluating
16 their effects."  <u>Lester v. Chater</u>, 81 F.3d 821, 829 (9th Cir. 1995) (citations omitted).  A finding
17 of equivalence must be based on medical evidence only.  20 C.F.R. § 404.1529(d)(3).  A
18 generalized assertion of functional problems is not enough to establish disability at step three.
19 <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1100 (9th Cir. 1999).
20 Listing 11.03 (nonconvulsive epilepsy) requires documentation by detailed
21 description of a typical seizure pattern, including all associated phenomena, occurring more
22 frequently than once weekly in spite of at least three months of prescribed treatment.  20 C.F.R.,
23 Pt. 404, Subpt. P. App. 1, Listing 11.03.  Plaintiff concedes he does not meet the Listing because
24 /////
25 /////
26 /////

he had only recently begun taking anticonvulsive medications. See SSR 87-6.[2] Plaintiff contends, however, that his syncopal episodes combined with an abnormal EEG and sleep apnea required the ALJ to undertake a more extensive analysis of whether plaintiff's symptoms, signs and laboratory findings equaled Listing 11.03. Plaintiff is incorrect.

Although the bulk of the ALJ's discussion of step three is directed to whether plaintiff met Listing 11.02 or 11.03, the ALJ also specifically found plaintiff's impairments do not equal the severity of any listing. AT 18, 23. The ALJ noted plaintiff continued to drive a vehicle, a factor that seriously undermines plaintiff's claim that his impairments in combination are so equal to the debilitating effects of epilepsy as to be irrebuttably presumed disabling. AT 18, 316. The ALJ also noted plaintiff had a negative tilt test in April 1999 and CT scan, EEG and MRI were negative during testing in November 1999 and April 2000. AT 16, 145, 182, 188. Not until May 2003 is there a report of abnormal EEG. AT 218. Although the relevant time period for the disability application at issue here commences on October 25, 2001, there was no error in the ALJ addressing the negative test results from the prior period inasmuch as they are indicia of plaintiff's medical condition prior to May 2003 and there are no intervening similar tests performed from April 2000 to May 2003. As discussed by the ALJ, there was a lack of

---

[2] SSR 87-6 provides, in pertinent part: "As a result of modern treatment which is widely available, only a small percentage of epileptics, who are under appropriate treatment, are precluded from engaging in substantial gainful activity (SGA). Situations where the seizures are not under good control are usually due to the individual's noncompliance with the prescribed treatment rather than the ineffectiveness of the treatment itself. . . . When seizures are alleged to be occurring at a disabling frequency, the following is essential to a sound determination:
   1. An ongoing relationship with a treatment source is necessary. . . . For epilepsy to be accurately evaluated for disability program purposes, the individual's file must contain adequate information regarding the history of the treatment regimen and his or her response to it. If an individual does not have an ongoing treatment relationship, it would be unreasonable to assume that the seizures cannot be controlled with medication, at least to the level at which the listing would not be met or equaled. Therefore, in the absence of an ongoing treatment relationship, the individual's impairment cannot be found to meet or equal the listings for epilepsy. . . .
   2. There must be a satisfactory description by the treating physician of the treatment regimen and response, in addition to corroboration of the nature and frequency of seizures, to permit an informed judgment on impairment severity. . . .
   3. In every instance, the record of anticonvulsant blood levels is required before a claim can be allowed.

treatment for syncopal episodes from February 2001 until July 2002.  AT 16, 224.  When seen in July 2002, plaintiff reported experiencing syncopal episodes only a "couple/few times a month."  AT 224.  Although polysomnography demonstrated moderate obstructive sleep apnea in May 2003, plaintiff apparently refused a CPAP machine for treatment of this condition.  AT 220-221.  Plaintiff fails to elucidate as to how the symptoms associated with sleep apnea, in combination with plaintiff's other impairments, equal Listing 11.03.  On this record, there simply is no indicia that plaintiff's symptoms, signs and laboratory findings equal in severity and duration the characteristics of Listing 11.03.  The ALJ did not err in the step three analysis.

      C.  Treating Physician's Opinion

Plaintiff also contends the ALJ improperly rejected the opinion of his treating neurologist, Dr. Ashley.  The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Lester, 81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical

findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Dr. Ashley, plaintiff's treating neurologist, opined in a residual functional capacity questionnaire dated July 2003 that plaintiff was limited to one hour each for walking, standing and sitting and that plaintiff could not perform even sedentary work due to loss of consciousness. AT 237-239. The ALJ rejected the extreme limitations assessed by Dr. Ashley in favor of the assessments performed by consultative examining physicians Drs. Pathak and Wiggers, whose conclusions were based on their own independent clinical findings. AT 19, 210-215, 227-236. The ALJ also noted the inconsistency between Dr. Ashley's report of the frequency of loss of consciousness and that reported in the medical records. AT 21, 166, 188, 227, 238. The ALJ factored into the analysis of Dr. Ashley's opinion the inconsistency of the doctor's taking no steps to terminate plaintiff's driving rights while at the same time indicating plaintiff could pass out and stop breathing. AT 21, 216, 316 (license was reissued at time of May 2003 hearing because plaintiff could sense when seizures were coming on). The ALJ further noted the inconsistency of Dr. Ashley reporting plaintiff stopped breathing during his syncopal episodes yet respiratory problems in association with the episodes were not reported by plaintiff. AT 21, 166, 174, 216, 223. The ALJ considered the findings in the prior disability application wherein the ALJ noted gross exaggerations of plaintiff's symptoms by Dr. Ashley. AT 21, 39. The reasons given by the ALJ for rejecting Dr. Ashley's opinion are specific and legitimate and supported by the record. There was no error in the ALJ's assessment of Dr. Ashley's opinion.

/////

/////

D.  Credibility

Plaintiff also asserts the ALJ improperly discredited his testimony with respect to

the frequency of his syncopal episodes and/or seizures. The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons. See, e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1995). If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors. Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc). If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions. See id. at 345-47. The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13. Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant. Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997). A failure to seek treatment for an allegedly debilitating medical problem may be a valid consideration by the ALJ in determining whether the alleged associated pain is not a significant nonexertional impairment. See Flaten v. Secretary of HHS, 44 F.3d 1453, 1464 (9th Cir. 1995). The ALJ may rely, in part, on his or her own observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot substitute for medical diagnosis. Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990). "Without affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and

convincing." Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ found plaintiff's testimony regarding his limitations as not totally credible for a variety of reasons. The ALJ noted extensive inconsistencies in the record regarding the frequencies of plaintiff's episodes. AT 20-21. The ALJ also relied on the failure of plaintiff to seek treatment for an allegedly debilitating condition for a significant portion of the time period under adjudication. AT 22. The ALJ also considered plaintiff's activities of daily living, which included caring for a three year old son and driving an automobile; the ALJ observed these activities were inconsistent with a claim that plaintiff could lose consciousness. AT 22, 315-316. The ALJ also noted that while plaintiff testified to severe headaches two or three times a week, plaintiff also reported to his doctor that his headaches were controlled with Vioxx. AT 175 (in 2000, Vioxx used to control headaches), 314 (in 2003, plaintiff testified he took Ultram, another analgesic, for pain). The factors considered by the ALJ all were valid and supported by the record. The ALJ's credibility determination was based on permissible grounds and will not be disturbed.

The ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards. Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment or remand is denied, and

2. The Commissioner's cross-motion for summary judgment is granted.

DATED: March 27, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

006/brodie.ss

10